1  Jean-Paul Ciardullo (SBN 284170)
   email:  jciardullo@foley.com
2  **FOLEY & LARDNER LLP**
   555 South Flower Street, Suite 3500
3  Los Angeles, CA 90071-2411
   Telephone:  213.972.4500
4  Facsimile:   213.486.0065

5  Attorneys for Plaintiff
   HERMÈS INTERNATIONAL,
6  a French corporation

7

8              **UNITED STATES DISTRICT COURT**

9              **CENTRAL DISTRICT OF CALIFORNIA**

10

11 | HERMÈS INTERNATIONAL, a French corporation, | Case No: |
   | Plaintiff, | **COMPLAINT FOR TRADEMARK INFRINGEMENT, FALSE DESIGNATION OF ORIGIN, UNFAIR COMPETITION AND DILUTION** |
   | v. | |
   | EMPERIA, INC., a California corporation, ANNE-SOPHIE, INC. d/b/a Emperia, a Delaware corporation, and TOP'S HANDBAG INC. d/b/a Emperia, a California corporation | |
   | Defendants. | |

Plaintiff Hermès International ("Hermès" or "Plaintiff"), by and through its attorneys, alleges as follows:

## INTRODUCTION

1. Hermès created, manufactures and sells the iconic "Birkin" handbag. Through enormous sales, publicity and media attention, the appearance of the Birkin Bag has become immediately recognizable to millions of women. Indeed, the design of the Birkin Bag has become so distinctive that it is a registered trademark. Defendants have sold thousands of inexpensive handbags which copy the overall appearance and salient design features of the Birkin Bag. In so doing, Defendants have created confusion among the public and have put Plaintiff's reputation at risk.

2. This is an action under federal and state law for trademark infringement, false designation of origin, unfair competition and dilution by tarnishment. Hermès seeks injunctive relief, damages, statutory treble damages, costs, an accounting of profits, and attorneys' fees based on Defendants' intentional infringement and related misconduct. Hermès brings these claims pursuant to the U.S. Trademark Act, 15 U.S.C. § 1051 *et seq.* and the common law of the State of California.

## PARTIES

3. Hermès is a French corporation having its principal place of business at 24, rue du Faubourg St. Honore 75008 Paris, France.

4. Upon information and belief, Emperia, Inc. is a California corporation that has its principal place of business at 2050 East 49th Street, Vernon, California 90058, within this judicial District, as well as a showroom at 110 East 9th Street, Los Angeles, California 90079, within this judicial district.

5. Upon information and belief, Anne-Sophie, Inc. ("ASI") is a Delaware corporation that does business as "Emperia" and has its principal place of business at 2050 East 49th Street, Vernon, California 90058, within this judicial District. Upon information and belief, ASI has also had a place of business at 10660 El Poche Street, South El Monte, CA 91733, which is also within this judicial district.

6. Upon information and belief, Top's Handbag Inc. ("Top's") is a California corporation that does business, from time to time, as "Emperia" and has its principal place of business at 2050 East 49th Street, Vernon, California 90058, within this judicial District.

## JURISDICTION AND VENUE

7. This Court has original jurisdiction over this action pursuant to 15 U.S.C. § 1121. This court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338, as questions of federal law have been presented under 15 U.S.C. § 1125(a). This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

8. This Court has *in personam* jurisdiction over Defendants because they are residents of the State of California and/or have their principal place of business in this judicial District. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b) because Defendants are corporations over whom this Court has personal jurisdiction, and therefore reside here, and because a substantial part of the claims arose in this District.

## FACTS COMMON TO ALL COUNTS

### Plaintiff and the Birkin Bag

9. Continuously since long prior to the acts of Defendants alleged herein, Plaintiff has been renowned throughout the world and in the United States for its high quality goods including leather goods, wearing apparel, fragrances, fashion accessories and home furnishings.

10. Plaintiff's original business was the production of elegant, custom made, high quality harnesses for horses. During the nineteenth century, Plaintiff's harness business expanded to saddlery and other related horseback riding equipment. During the twentieth century, Plaintiff expanded its business further to include hand made handbags, personal leather goods, and wearing apparel. Throughout its history, Plaintiff has maintained its reputation for the manufacture of goods of the highest quality, without compromise. Unlike some other so-called luxury goods manufacturers, Plaintiff does not

license its trademarks for use on goods made by others, and all of its leather goods are made within Plaintiff's own factories and workrooms.

11. Continuously since at least as early as 1984, Plaintiff has manufactured and sold, within the United states and in other countries, a leather handbag which has become known as the Birkin Bag. The Birkin Bag is named after the actress and singer Jane Birkin, and was created out of a chance meeting between Ms. Birkin and Jean-Louis Dumas, then chairman of Hermès. M. Dumas remodeled a capacious tapestry bag to suit Ms. Birkin's needs.

12. While Birkin Bags have been manufactured using leathers of various types and textures, all Birkin Bags have a design that is characterized by, *inter alia*, (a) a distinctive three lobed flap design with keyhole shaped notches to fit around the base of the handle, (b) a dimpled triangular profile, (c) a closure which consists of two thin, horizontal straps designed to fit over the flap, with metal plates at their end that fit over a circular turn lock, (d) a padlock which fits through the center eye of the turn lock and (e), typically, a key fob affixed to a leather strap, one end of which is affixed to the bag by wrapping around the base of one end of the handle. A photograph of a genuine Birkin Bag is attached as Exhibit A.

13. Each Birkin Bag is handcrafted from the finest leather by an experienced artisan or artisans. A single such handbag requires between sixteen and nineteen hours of labor to create. Because of the intensive labor and craftsmanship involved in creating Birkin Bags, they are very expensive. Prices start at about $6,000, and some models are more expensive. Nevertheless, there is a waiting list to obtain such bags. Currently, a customer must wait at least several months to obtain a Birkin Bag from one of Plaintiff's stores in the United States.

14. Despite the high price and exclusivity of the Birkin Bag, its design has become enormously identifiable and well recognized among the general public, primarily due to the considerable attention given by the fashion press and general media. Indeed, photo spreads incorporating the Birkin Bag are a staple of fashion magazines.

15. The Birkin Bag, and the desire to own one, became so well known that it became a key plot element in an episode of the HBO series *Sex and the City*. The Birkin Bag has also been featured in the motion pictures "Blue Jasmine" and "The Royal Tenenbaums" and in episodes of television shows such as *Gilmore Girls, Will and Grace* and *Gossip Girls*. Widespread media coverage reported that Martha Stewart carried a genuine Hermès Birkin Bag during her trial. Recent media reports covered the collections of Hermès Birkin Bags owned by Jessica Simpson and the Kardashian sisters.

16. The Birkin Bag does not bear the word mark BIRKIN on it or on any hang tags sold with it.

17. As a result of the enormous sales, extensive advertising and promotion and ubiquitous publicity and attention in the press and media, the design of the Birkin Bag acquired secondary meaning and has become a famous trademark (the "Birkin Bag Trademark"), associated exclusively with Plaintiff.

18. The design configuration of the Birkin Bag has become so well-recognized that the U.S. Patent and Trademark Office determined that it acquired sufficient distinctiveness to merit a registration on the Principal Register. Plaintiff is the owner of U.S. Trademark Registration No. 3,936,105 for the configuration of the Birkin Bag, which registration is in full force and effect. A copy of the Certificate of Registration is attached as Exhibit B.

19. The strap/turn lock/padlock closure of the Birkin Bag, also used on Plaintiff's equally famous Kelly Bags (the "Closure Trademark") itself has become so recognizable and distinctive that it too is the subject of a trademark registration on the Principal Register, U.S. Trademark Registration No. 1,806,107. This registration is in full force and effect and is incontestable. A copy of the Certificate of Registration is attached as Exhibit C.

### Defendants' Acts

20. Defendants are in the business of importing women's handbags and reselling them to distributors and retailers in the United States. Upon information and belief,

Defendants are sister corporations under common ownership. Defendants have done business, from time to time, as "Emperia" or "Emperia Handbag, Inc."

21. Upon information and belief, beginning at least as early as the fall of 2010, Defendant Top's began selling a faux crocodile bag, Item No. GM3-1735, which was a close copy of the Hermès Birkin Bag. Top's sold more than 1600 units of this bag to Charming Charlie, an online retailer based in Houston, Texas. Upon information and belief, this bag was sold to other distributors and/or retailers as well. A photograph of this handbag (the "Charming Charlie Handbag") is attached to this Complaint as Exhibit D.

22. In April, 2011, Defendant ASI, doing business as Emperia, began taking orders from the online retailer Just Fabulous, Inc. ("JustFab"), which does business as JustFab.com, for a handbag designated by ASI as item 12148, which closely imitated the design of the Hermès Birkin Bag. Shipments of these bags began in June, 2011. By August, 2011, ASI had shipped over 3000 units of this knockoff Birkin Bag to JustFab.

23. In a letter to Charming Charlie dated August 25, 2011, counsel for Hermès alleged that the Charming Charlie bag infringed its trademark rights in the Birkin Bag. Upon information and belief, soon thereafter, Charming Charlie informed its supplier, Defendant Top's, about the infringement claim by Hermès.

24. Despite its actual knowledge of the rights of Hermès in the Birkin Bag trademark in or about August, 2011, ASI continued to sell large quantities of knockoff Birkin handbags to JustFab and, indeed, added additional knockoff Birkins to the line being sold to JustFab. JustFab sold these bags under the names "Icon," "Law," "Principle," "Visionary," "Hearst Castle," "Shoreline" and "Petite Icon" (collectively, the "JustFab Bags"). Photographs of the JustFab Bags are attached to this Complaint as Exhibit E.

25. Upon information and belief, Defendants ASI and Top's sold the Charming Charlie Bag and the JustFab Bags (collectively, the "Accused Handbags") to distributors and retailers other than Charming Charlie and JustFab, and continued to do so at least

until they received the initial cease and desist letter from counsel for Hermès dated November 26, 2013.

26. Upon information and belief, Defendant Emperia, Inc. is a sister company of ASI and Top's, having the same headquarters, and being involved in the same acts of infringement as ASI and Top's.

27. Upon information and belief, due to the fame and favorable fashion image of the Birkin Bag, there is substantial public demand for handbags which imitate its appearance.

28. Defendants have reproduced, copied or colorably imitated Plaintiff's Birkin Bag trademark and its Closure trademark on and in connection with the advertising, marketing, importation, sale and distribution of handbags throughout the United States and within this judicial District.

29. Defendants' sale of handbags which are identical or confusingly similar in design to Plaintiff's Birkin Bag has created a likelihood of confusion, mistake or deception.

30. Upon information and belief, Defendants willfully and deliberately undertook the aforesaid course of action with intentional disregard of the trademark rights of Plaintiff in the Birkin Bag trademark and Closure trademark, and willfully continued its infringing activities even after actual notice of the infringement claim by Hermès against one of their customers.

31. Defendants' Accused Handbags are made from vinyl, not leather, and sell at wholesale prices of between $15.00 and $20.00. They are unquestionably inferior in quality, workmanship and durability to the famous Hermès Birkin Bag.

32. By their actions alleged herein, Defendants have sought to take unfair advantage of the fame and reputation of the Birkin Bag, by leading people to believe that Plaintiff has engaged in the licensing of the design of its handbag in connection with inexpensive goods, so as to tarnish Plaintiff's reputation for quality and commercial integrity.

33. Defendants' acts alleged herein were undertaken willfully and with the purpose of confusing the public and unfairly exploiting the wide fame and reputation of Plaintiff and the Birkin Bag.

## COUNT ONE

### (Trademark Infringement Under Lanham Act - 15 U.S.C. § 1114)

34. Hermès repeats and realleges the allegations set forth in paragraphs 1 through 33 of its Complaint as if fully set forth herein.

35. Defendants' advertising, promotion, importation, offering for sale and sale of handbags which are identical or confusingly similar in design to the genuine Birkin Bag is likely to cause confusion, mistake or deception as to the origin, sponsorship or approval of Defendants' handbags.

36. Even if the trade and ultimate consumers purchase Defendants' knockoff handbags knowing that they do not emanate from Hermès and are not genuine Birkin Bags, the public seeing the knock-off handbags being carried by consumers will believe that they are, in fact, genuine, thereby giving purchasers of Defendants' knock-off handbags the prestige and cachet of the Birkin Bag at a fraction of the cost, and thereby creating actionable "post-sale" confusion among the public.

37. Defendants' actions alleged herein constitute infringement of Plaintiff's registered trademarks, U.S. Regs. Nos. 3,936,105 and 1,806,107 in violation of Section 34 of the Lanham Act, 15 U.S.C. § 1114.

38. Upon information and belief, Defendants have undertaken these acts with the express intent to confuse, mislead or deceive the public as to the origin of Defendants' products.

39. As a direct and proximate result of Defendants' actions, Hermès and the public have been and will continue to believe irreparably damaged unless Defendants are enjoined by this Court.

40. Hermès has no adequate remedy at law.

## COUNT TWO

### (False Designation of Origin – 15 U.S.C. § 1125(a)(1)(A))

41. Hermès repeats and realleges the allegations contained in paragraphs 1-40 of its Complaint as if set forth herein.

42. The Birkin Bag Trademark has acquired a secondary meaning and has become identified by consumers as associated with Hermès exclusively. The design of the Birkin Bag is not functional.

43. Defendants' actions alleged herein constitute false designation of origin under the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

44. Upon information and belief, Defendants have undertaken these acts with the express intent to confuse, mislead, or deceive the public as to the origin of Defendants' products.

45. As a direct and proximate result of Defendants' actions, Hermès and the public have been and will continue to be irreparably damaged unless Defendants are enjoined by this Court from advertising and selling the Accused Handbags.

46. Hermès has no adequate remedy at law.

## COUNT THREE

**(Trademark Infringement and Unfair Competition Under California Common Law)**

47. Hermès repeats and realleges the allegations contained in paragraphs 1 through 46 of its Complaint as if set forth herein.

48. Defendants' actions constitute trademark infringement and unfair competition under the common law of the State of California.

49. Upon information and belief, Defendants have undertaken these acts with the express intent to confuse, mislead, or deceive the public as to the origin of Defendants' products.

50. As a direct and proximate result of Defendants' actions, Hermès and the public have been and will continue to be irreparably damaged unless Defendants are enjoined by this Court from advertising and selling the Accused Handbags.

51. Hermès has no adequate remedy at law.

## COUNT FOUR

### (Dilution – 15 U.S.C. § 1125(c))

52. Hermès repeats and realleges the allegations contained in paragraphs 1 through 51 of its Complaint as if set forth herein.

53. Plaintiff's Birkin Bag Trademark is a famous trademark.

54. By selling inferior, vinyl, machine-made copies of the Birkin Bags, Defendants have created dilution of Plaintiff's famous trademark by tarnishment, by associating Plaintiff's fine goods with Defendants' inexpensive, lower quality products and by creating the false impression that Plaintiff has given in to the temptation to license its famous trademark for mass market goods.

55. As a direct and proximate result of Defendants' actions, Hermès has been and will continue to be irreparably damaged unless Defendants are enjoined by this Court from advertising and selling their infringing tote bag.

56. Hermès has no adequate remedy at law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment that:

a. Defendants, their officers, agents, servants, employees, attorneys, and all persons acting in active concert with them, be permanently enjoined and restrained from importing, offering for sale, advertising, promoting, selling, shipping or assisting in the sale of the Accused Handbags, or any other handbags which are so similar to the Birkin Bag as to cause confusion, mistake or deception;

b. Defendants be ordered to deliver up for destruction any and all inventory of the Accused Bags or any other handbags subject to this Court's injunction, together with any and all advertising or promotional material therefor;

c. Defendants be required to provide the names and contact information of any and all suppliers of the Accused Bags;

d. Defendants be required to account for and pay over to Plaintiff all damages sustained by Plaintiff and all profits realized by Defendants by reason of their unlawful acts alleged herein;

e. All damages awarded to Plaintiff under Count I be trebled, pursuant to 15 U.S.C. Section 1117;

f. Defendants be required to pay to Plaintiff all of Plaintiff's costs, disbursements, and attorneys' fees in this action, as provided by law, including 15 U.S.C. § 1117;

g. Defendants be required to file with the Court and serve upon Plaintiff's counsel within thirty (30) days after entry of any injunctive relief herein a written report under oath setting forth in detail the manner and form in which Defendants have complied with the requirements of the aforementioned orders; and

h. Plaintiff have such other and further relief as the Court may deem just and equitable.

Dated: May 7, 2014                    Respectfully submitted,

                                      FOLEY & LARDNER LLP

                                      By:_____
                                          JEAN-PAUL CIARDULLO
                                          Attorneys for Plaintiff
                                          Hermès International

*Of Counsel:*
Andrew Baum
FOLEY & LARDNER LLP
90 Park Avenue
New York, New York 10016
(212) 338-3527
abaum@foley.com